### STEED, receiver, *v.* SAVAGE *et al.*

1. Whether a petition is based upon an equitable or a legal cause of action depends upon the character of the relief sought, as shown by the prayers, which indicate whether the alleged cause of action is intended by the pleader as founded upon legal or equitable principles; and upon general demurrer it will be determined whether the averments of the petition are such as to authorize the relief called for by the prayers.

2. When a petition contains some averments which are appropriate to a legal cause of action and the prayers of the same call for equitable relief only, the court upon general demurrer will decide whether the petition as a whole authorizes the equitable relief prayed for; and if it does not, the demurrer will

115　97
Case 2
116　687

115　97
Case 2
120　445

115　97
Case 2
122　110

115　97
Case 2
f128　753

be sustained, notwithstanding there may be averments in the petition which as against a general demurrer might constitute a legal cause of action.

3. A judgment sustaining a general demurrer to a petition of the character indicated in the preceding note would not conclude the parties thereto on any matter except that the petition did not authorize the equitable relief prayed for.

4. The plaintiff in an equitable petition in the nature of a bill of interpleader must allege that he is in possession and control of the property concerning which the interpleader is sought; and when upon the face of the petition it is shown that he is neither in possession nor control of such property, the petition is fatally defective and should be dismissed on general demurrer.

5. Applying the principles above laid down to the present case, the petition, considered in the light of the prayers, can not be construed to be an action for the recovery of real property. Properly construed, it was a petition in the nature of a bill of interpleader, and as such was fatally defective, for the reason that it appeared therefrom that the plaintiff was·not in possession of the property concerning which the interpleader was sought; and the court rightly sustained a general demurrer to the petition.

Submitted March 1, — Decided April 1, 1902.

Equitable petition. Before Judge Brinson.· Richmond superior court. August 3, 1901.

*W. E. Jackson* and *J. R. Lamar*, for plaintiff.
*W. H. Barrett* and *J. S. Reynolds*, for defendants.

Cobb, J. Clifford A. Steed, styling himself " as receiver appointed by said court in the matter of W. S. Roberts as surviving trustee of the Weston Academy," filed a petition addressed to the superior court of Richmond county, alleging in substance as follows: The order of the court in the matter referred to directed the receiver to collect the assets and property of the Weston Academy and hold the same subject to the order of the court. He has received from Roberts a stated sum of money. He has demanded possession of the schoolhouse and lot in dispute, which is referred to in the petition of Roberts, from Elizabeth N. Savage and six other named persons, who are the heirs at law of Elizabeth Savage and W. B. Savage, and who are in possession of the lot just referred to; and his demand for possession has been refused. The order appointing him receiver directed him to take such legal action as might be necessary to obtain possession of the assets and property of the Weston Academy, and he is advised by his counsel that he should institute suit to obtain possession of the schoolhouse and lot in order that the claims asserted and rights and issues involved may be passed upon and adjudged by the court. The petition of

Roberts, under which plaintiff was appointed receiver, fully sets forth the contentions of Roberts. The prayers of the petition were, "(a) that process may issue, requiring the said parties to be and appear at the next term of said court and interplead, setting forth their respective claims and rights to the premises in dispute; (b) that such direction, order and decree may be passed in the premises as the court shall deem fit and proper." The petition of Roberts which is referred to was exhibited to the petition, and is in substance as follows: In 1856 petitioner and others were incorporated under the name and style of the Weston Academy, for the purpose of maintaining a school or academy in a suburb of the city of Augusta now known as Harrisonville, and also for religious purposes. George Schley, trustee under the will of Elizabeth Savage, conveyed a described parcel of land to the Weston Academy, and William B. Savage, for whose benefit the trust under the will was created, united in the deed. The property conveyed by Savage and his trustee was used for school and religious purposes, from the date of the conveyance until some time during the year 1897. The charter of the Weston Academy expired in 1870, and petitioner and the other surviving incorporators remained in quiet and peaceable possession, notwithstanding the expiration of the charter, until all of the incorporators had died except petitioner, who is now the sole surviving corporator named in the original charter. The property described in the deed from Savage and his trustee, together with the improvements thereon, is valued at $800, or other large sum, and it is the only asset of the Weston Academy except a small debt due it. The heirs of Elizabeth Savage have taken possession of the lot, claiming that upon the dissolution of the corporation by the expiration of the charter the property reverted to them. The petition avers that the conveyance to the Weston Academy was an absolute conveyance without any provision for a reversion, and that in law the property did not revert to the grantor or his heirs, but that the same is charged with a public trust and should still be used for school and religious purposes. A new charter has been granted by the court, containing the same terms and provisions as those set forth in the original charter of the Weston Academy and such as are incident to a corporation of that character, and the property should be conveyed to this corporation. There is now no person authorized to sue for and recover the prop-

erty, and in order to prevent loss and damage it is necessary that a receiver should be appointed with authority to collect what may be due to the former corporation and to demand a surrender of the property, and, in the event it is refused, to institute proceedings to recover the same, and when recovered to convey the same to the new corporation, or hold the same subject to the further order of the court. The prayer of the petition was, that a receiver be appointed with authority to "demand and take possession of the property, care for the same, and, if necessary, to institute proceedings to recover the possession thereof," and that when recovered the receiver may be authorized and required to convey the same to the new corporation, to be held by it for school and religious purposes.

Upon this petition being presented to the judge, an order was passed appointing Clifford A. Steed "receiver of all the property and assets of the corporation known as the Weston Academy, incorporated October 13, 1856, with authority to demand possession thereof, and when obtained to manage the same subject to the further order of the court, and with further authority to institute suit for the recovery of the property described in the deed" from W. B. Savage and his trustee, and to hold the same subject to the further order of the court. Attached to this petition as exhibits were copies of the charter granted to the Weston Academy in 1856, the deed from George Schley, trustee, and William B. Savage to the Weston Academy, and the petition and order incorporating W. S. Roberts and his associates as the Weston Academy, granted in 1899. To the petition of the receiver Elizabeth N. Savage and the other heirs at law of Elizabeth Savage and W. B. Savage filed a general demurrer, alleging that the petition set forth no cause of action; and this demurrer was sustained, to which judgment the receiver excepted. In the briefs filed by counsel in this court the petition filed by the receiver was treated as in effect an action of ejectment against the heirs of Elizabeth Savage and W. B. Savage, and elaborate briefs and arguments were filed by counsel for both sides, discussing the question as to whether upon the expiration of the charter of the Weston Academy the title to the property conveyed by Schley, trustee, reverted to the heirs of Elizabeth Savage. We do not think the petition of the receiver can be properly treated as an action of ejectment, and for this reason we will not undertake in this case to determine the question of title raised in the argument. The record does not disclose

upon what ground the judge based his ruling that the petition set forth no cause of action, but the presumption is that he properly construed the petition, and his judgment dismissing the petition will be dealt with in the light of this presumption.    While there are in the petition certain allegations which would be appropriate in a petition filed for the purpose of recovering possession of land, there is nothing in the prayers of the petition to indicate that the pleader intended the petition to be construed as one filed for the purpose of recovering possession.    Nor is there attached to the petition an abstract of the title relied on, which under the code is required in actions for the recovery of land.    Civil Code, §§ 4963, 5002.    The prayers of a petition indicate the purpose for which it is filed; and while the allegations of a petition may be such as would be appropriate to an action at law, when the prayers are such as to indicate that the pleader intended it as one setting up an equitable right, no other relief can be granted under the petition than that which is appropriate to the prayers embodied in the same.

There is no prayer in the present petition asking for the specific recovery of the property therein described.    The prayers contained therein rather indicate that it is not the intention of the pleader that there should be any recovery by the receiver of the property until the question has been settled as to whether Roberts and his associates or the heirs of Elizabeth Savage and W. B. Savage are the owners of the property.    The prayer for specific relief is that the *parties,* which would include both Roberts and the heirs of Elizabeth Savage, appear "and interplead, setting forth their respective claims and rights to the premises in dispute."    It is true that the petition contains a prayer for general relief, but it is well settled that "where a specific prayer in an equitable petition is followed by a prayer for general relief, the plaintiff is not entitled under the latter to any relief which is not consistent with the case made by the petition and with such specific prayer."    *Hairalson* v. *Carson,* 111 *Ga.* 57, 59, and cases cited.    See also *Marine Bank* v. *Early,* *R. M. Charl.* 279.    The only prayer of the petition is then for an interpleader between the heirs of Elizabeth Savage and Roberts, or, if the word "parties" in the prayer would not embrace Roberts, then for an interpleader between the heirs of Elizabeth Savage themselves, or between those heirs and the heirs of W. B. Savage, or between Roberts and the heirs of both Elizabeth and W. B. Sav-

age, in order that it may be determined who is the owner of the property conveyed by Schley, trustee, to the Weston Academy. The petition can not be properly construed to be an action of ejectment, and can be treated only as an equitable petition for an interpleader.    Treating it as such, can it be upheld?    The code provides: "Whenever a person is possessed of property or funds, or owes a debt or duty to which more than one person lays claim, and the claims are of such a character as to render it doubtful or dangerous for the holder to act, he may apply to equity to compel the claimants to interplead."    Civil Code, § 4896.    This section simply states a well-settled equitable principle.    See 2 Story's Eq. Jur. (13th ed.) § 806; Bisp. Pr. Eq. (6th ed.) § 419; 11 Enc. P. & P. 446; 3 Pom. Eq. Jur. (2d ed.) § 1320.    While the language of the section of the code above quoted, as well as the language of the textwriters just cited on the subject of the right to compel an interpleader, seems to indicate that this right is applicable only in cases where the person calling for the interpleader is in possession of a chattel or other personal property, and the greater number of cases on the subject of when an interpleader is allowed are cases dealing with that class of property, still the equitable principle at the foundation of the right to compel an interpleader has been at least tacitly recognized as applicable where one has vested in him the legal title to land but admits that he holds the same, not in his own right, but in behalf of some other person, and there are two or more persons claiming the property.    In Farley *v.* Blood, 10 Foster (N. H.), 354, an interpleader was allowed upon the application of one who held the legal title to land and admitted that he was a mere trustee and had no interest therein, and set up that there was uncertainty as to whom he should convey the property, it being claimed by different parties.    It was held that in such a case the plaintiff in the bill for interpleader ought to assign conveyances of the property to each of the claimants and tender them to the court and aver his readiness to deliver a conveyance to whichever of the claimants the court should hold was entitled thereto, and the court would then order the conveyances thus made to be filed with the clerk subject to the further order of the court.    The mere fact that land then is the subject of the present controversy, it seems, would not alone prevent the receiver from filing a petition in the nature of a bill of interpleader, if he were otherwise entitled to equitable relief of this character.

It is, however, essential to the maintenance of an equitable proceeding praying for an interpleader that the plaintiff should be in possession of the property concerning which the interpleader is sought. The very language of the section of the code above quoted indicates this; it says, whenever "a person is possessed of property" which is claimed by more than one person, and it is doubtful or dangerous for the holder to deliver to either, he may apply to a court of equity to compel the claimants to interplead. "A bill of interpleader can be filed only by one in possession or control of the fund or thing in dispute." 11 Enc. P. & P. 460. The purpose of a bill of interpleader is to ascertain to whom the plaintiff shall deliver the property, and if he is not in possession he could not comply with a decree requiring him to deliver to one of the claimants; and for this reason, where it appears upon the face of the petition praying for an interpleader that the plaintiff is not in possession, the petition is fatally defective and should be dismissed upon general demurrer. Applying these principles to the present case, the judgment of the court sustaining a general demurrer to the petition was the only proper judgment that could have been rendered. As the petition could not properly be construed to be an action of ejectment, neither the judgment of the court below nor the judgment of this court affirming that judgment would affect the rights of any of the parties to the present case to set up hereafter their claims, whatever they may be, to the property described in the present proceeding. The order appointing the receiver confers upon that officer the right to bring a suit for the recovery of this property, but the suit brought by him is not a suit for this purpose; and even if the suit brought by him were otherwise maintainable, it might be subject to the objection that it was brought without authority of the court appointing him. In any event, no suit for the recovery of the property has been brought. The question of title is not involved nor passed upon in the present case, and the parties are left by the judgment rendered, as to all matters growing out of or connected with the title to the property involved, just as if the present proceeding had never been instituted.

*Judgment affirmed. All the Justices concurring, except Little and Lewis, JJ., absent.*